Hely, J.
A. Introduction
This case was tried before the court without a jury on March 2, 1994. The plaintiff alleges that Goodman owes the plaintiff money for expenses and for legal services rendered by Attorney Robert A.-Aronson. The plaintiff seeks to establish a Hen under G.L.c. 221, §50.
The findings of fact stated herein are based on my in-person assessment of the credibility and weight of the evidence and the reasonable inferences that I have drawn from the evidence. This Memorandum of Decision supplements the findings of fact stated on the record in open court at the end of the trial on March 2, 1994.
B. Findings of Fact
The plaintiff made disbursements of $141 during the representation of Steven H. Goodman by Robert A. Aronson in Goodman’s case against the Commerce Insurance Company. During this representation, Goodman installed cabinets at the offices of Lubart and Aronson. The fair value of these cabinets as installed by Goodman was $150.
With respect to the applications for criminal complaints, I believe the testimony of Goodman and of Attorney David O. Brink. To the extent that Attorney Aronson’s testimony conflicts with that of Goodman and Brink regarding the criminal complaint applications, I do not believe the testimony of Attorney Aronson.
Attorney Aronson applied for and assisted Goodman in applying for criminal complaints against Attorney Ronald Eckert and Attorney David O. Brink in the Quincy District Court and against the Commerce Insurance Company in the Dudley District Court. Although Goodman was named as the only applicant, Aronson and Goodman were in fact joint applicants. The complaint applications in the Quincy District Court were filled out by Attorney Aronson. All of Goodman’s conduct with respect to the applications for criminal complaints was done at the suggestion of and pursuant to the advice of Attorney Aronson. The applications for criminal complaints were Attorney Aronson’s idea.
Attorneys Eckert and Brink represented the Commerce Insurance company in the insurance claim by Goodman against Commerce. Attorney Aronson represented Goodman in that case. In March 1992, Attorney Aronson told Goodman that he would bring up the insurance company and their attorneys on criminal charges for misquoting the content of an insurance policy. Attorney Aronson told Goodman that Attorneys Eckert and Brink and the insurance company violated his civil rights. Attorney Aronson told Goodman that the criminal charges would help get more money for Goodman in the civil case and might also cause the insurance company to refer legal business to Aronson.
Attorney Aronson took Goodman in Aronson’s vehicle to the Quincy District Court on March 30, 1992. He acted jointly with Goodman in applying for criminal complaints against Attorneys Eckert and Brink using Goodman’s name as the name of the complainant. The complaint applications alleged violations of G.L.c. 175, §181. On approximately the same date, Attorney Aronson also applied for a criminal complaint against the Commerce Insurance Company in the Dudley District Court. Attorney Aronson filed this complaint application jointly with Goodman although he used only Goodman’s name as the name of the complainant.
In communications with the attorneys for the Commerce Insurance Company, Attorney Aronson referred to and attempted to use the pending criminal complaint applications to obtain negotiating and settlement advantages in Goodman’s case against the insurance company. Attorney Aronson suggested to the insurance company attorney that he should bring a claims manager with him to the criminal complaint application hearing so that they could discuss settlement of the civil action while at the courthouse on the criminal matter.
On April 22, 1992, Attorney Aronson and Goodman went to the Quincy District Court for the scheduled hearing on the criminal complaint applications against Attorneys Eckert and Brink. On this day Attorney Aron-son again drove Goodman to the Quincy District Court in Aronson’s vehicle. When the case was called before a clerk, Attorney Aronson informed the clerk that they were dropping their complaint applications.
The three criminal complaint applications brought by Attorney Aronson were frivolous and brought in bad faith. Attorney Aronson had no reasonable basis for a belief that Attorneys Eckert and Brink and the Commerce Insurance Company had violated G.L.c. 175, § 181. In all their dealings with Goodman and Attorney Aronson, Attorneys Eckert and Brink accurately stated the contents of the insurance policy, including the requirement of an examination under oath. At no time did they misquote the policy.
On the date scheduled for the criminal complaint application against Commerce Insurance Company in *634 the Dudley District Court, neither Attorney Aronson nor Goodman appeared. Attorney Aronson decided to drop the matter without notifying the Commerce Insurance Company or its attorney. Attorney Aronson caused an attorney for the insurance company to waste half a day in travelling to and from the Dudley District Court to attend a needless hearing on this matter.
Attorney Aronson engaged in egregious misconduct as an attorney in the course of representing Goodman in the case against Commerce Insurance Company. His conduct with respect to the three criminal complaint applications violated Disciplinary Rules DR 7-105 and DR 7-102(A)(l) and (2) and minimum standards of professionalism, ethics and courtesy applicable to an attorney. This misconduct substantially harmed his client’s case. It harmed the practical setüementvalue of the case. It substantially delayed the resolution of the client’s case at a time when the client was making monthly payments on a note for the damaged car and when time was of significant economic importance to him. Had it not been for Attorney Aronson’s egregious misconduct regarding the criminal complaint applications, Goodman’s case against Commerce would have been settled much more promptly and at a much greater economic value to Goodman.
Attorney Aronson’s misconduct caused substantial harm to Attorney Eckert and Attorney Brink and to their law firm, Byrnes, Smith and Brink. Attorney Aronson’s misconduct caused substantial harm to the profession and to the ability of attorneys to perform their duties faithfully with mutual trust, courtesy and cooperation.
The Commerce Insurance Company is engaged in extensive litigation throughout the Commonwealth in personal injury and insurance matters. Attorney Aronson’s misconduct undermined the confidence of clients and the public in the honor and trustworthiness of the bar and undermined public respect for the courts and legal proceedings. The misconduct has a tendency to cause attorneys, clients, insurance companies, and members of the public to believe that such behavior is to be expected by attorneys in the course of litigation.
Goodman discharged Attorney Aronson as his attorney because of the substantial delays and lack of positive results in his case that were caused by Attorney Aronson’s misconduct regarding the criminal complaint applications. The discharge of Attorney Aronson was for good and sufficient cause. Goodman had a contingent fee agreement with Attorney Aronson.
The value of Attorney Aronson’s services to Goodman apart from his misconduct was almost totally destroyed by the effects of his misconduct.
C. Rulings of Law
Because of Attorney Aronson’s egregious ethical misconduct and the substantial harm it caused to the value of Goodman’s case, on the particular facts and circumstances of this case it would be against public policy to permit the plaintiff to recover any damages for the minimal value of Attorney Aronson’s services. D. Order
The preliminary injunction is dissolved.
A judgment will enter for the defendants.